Filed in Lancaster District Court
\*\*\* EFILED \*\*\*
Case Number: D02CI180002880
Transaction ID: 0007361830
Filing Date: 08/27/2018 05:01:20 PM CDT

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| John Doe | ) | |
| | ) | |
| Plaintiff | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| University of Nebraska, | ) | |
| University of Nebraska Board of Regents | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to

Plaintiff John Doe[1] (hereinafter referred to as "Plaintiff" or "John Doe"), by his attorney Roger Moore of Rehm, Bennett, Moore, Rehm & Ockander, as and for his Complaint, respectfully alleges as follows:

### THE NATURE OF THIS ACTION

1.   This case arises out of the actions taken and procedures employed by Defendants University of Nebraska ("Defendant UNL" or "UNL" or the "University") and the University of Nebraska Board of Regents (collectively, "Defendants") concerning actions taken by Defendants and their employees and/or agents against Plaintiff, a male student at UNL with an unblemished academic and disciplinary record, as a result of false allegations of "sexual misconduct" with fellow UNL student Jane Roe.

---

[1] Plaintiff proceeds pseudonymously and refers to the complainant pseudonymously as Jane Roe.

**EXHIBIT 1**

2.     On or about December 21, 2017, Plaintiff received a letter from a UNL Title IX Deputy Coordinator/Investigator in the Office of Institutional Equity and Compliance that informed Plaintiff that, *inter alia,* he was the subject of an investigation involving allegations of sexual misconduct including three allegations of sexual misconduct with a former girlfriend and fellow student at her residence over a year and three months duration at times when neither student was enrolled in classes.

3.     It is uncontroverted that Plaintiff and Jane Roe were in a longtime dating relationship and that Jane Roe filed her complaint with UNL in November 2017, alleging incidents that occurred up to a year and a half earlier.

4.     The allegation made by Jane Roe that was ultimately decided by the UNL Conduct Board concerns an alleged sexual assault that occurred on July 24, 2017, at Roe's off-campus apartment at a time when neither student was enrolled in or attending classes at UNL.

5.     On June 26, 2018, Defendants denied Plaintiff's appeal of the Conduct Board's decision and upheld a lifetime expulsion.

6.     A non-exhaustive list of Defendants' wrongful and unlawful actions include the following: (i) Defendants failed to conduct a thorough and impartial investigation; (ii) Defendants evidenced a gender bias against Plaintiff as the male accused throughout the investigative and hearing process; (iii) Defendants made assessments of credibility and evidentiary weight with respect to each party and witnesses without any ascertainable rationale or logic; (iv) Defendants failed to afford Plaintiff the requisite presumption of innocence required by a preponderance of the evidence standard; (v) Defendants unlawfully utilized a different standard of proof for this proceeding as compared to other University student conduct

hearings; (vi) a lack of due process by not allowing the Plaintiff to present evidence and not allowing Plaintiff to question Jane Roe; (vii) Defendants lacked jurisdiction over the off-campus conduct; (viii) conflicts of interest that resulted in a biased adjudication; (ix) lack of an official record of the hearing; (x) the failure to properly investigate and collect all available evidence (xi) the improper inclusion of information in the Fact-Finder's report which the hearing panel and decision maker erroneously interpreted as a determination of responsibility; (xii) failure to define the policy violation; (xiii) lack of a rationale for the Decision and Sanction; and, (xiv) the imposition of an unduly harsh and unwarranted sanction of expulsion. All of these errors, individually and when taken together, unfairly and materially affected the outcome of Plaintiff's case and a violation of Plaintiff's right to Due Process.

7.     As a result of Defendants' discriminatory and unlawful conduct, Plaintiff has been denied the opportunity to continue with his UNL education. The marking of Plaintiff's academic transcript with an expulsion for a violation of student conduct policy will permanently deny Plaintiff educational and career opportunities and has irrevocably damaged his relationship with his employer. Moreover, Plaintiff has been ostracized from his friends and from the campus community, made a social pariah, and forever damaged emotionally by the excruciating and unfair process and the unjust results flowing therefrom. Plaintiff has also sustained damages to his future education and career prospects as a result of the Decision and Sanction.

8.     Plaintiff therefore brings this action to obtain relief based on causes of action for review of the agency action under the Administrative Procedure Act, for violations of Title IX of the Education Amendments of 1972, breach of contract, for violation of his civil rights, and other state law causes of action.

## THE PARTIES

9.      Plaintiff is a natural person, citizen of the United States, and resident of the State of Nebraska. During the events described herein, Plaintiff was enrolled as a part-time student at the University of Nebraska. When Plaintiff was attending UNL, he resided at all times in Nebraska.

10.     Defendant University of Nebraska is a public research university, located in the city of Lincoln, Lancaster County, Nebraska, with an address of 1400 R St., Lincoln, Nebraska 68588, and is governed pursuant to the Nebraska Constitution by its duly-elected Board of Regents.

11.     The Board of Regents is composed of 8 voting members elected by district for six-year terms.  The Board also includes four non-voting student Regents, one from each NU campus, that serve during their tenure as student body president, and Defendant Board of Regents oversees and approves UNL's written policies, including UNL's Sexual Misconduct Policy.

12.     Plaintiff and Defendants UNL and the University of NebraskaBoard of Regents are sometimes hereinafter collectively referred to as the "Parties."

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendant UNL and the Board of Regents.

14.     Venue for this action properly lies in the Lancaster County District Court.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Agreements, Representations, Covenants and Warranties Between Plaintiff and UNL

15.     Plaintiff earned a Bachelor of Arts, Master of Arts, and was working toward a

PhD, with a 3.6 GPA and approximately 39 credit hours in his program before he was expelled for the alleged sexual misconduct at issue in this lawsuit.

16.    Plaintiff has excelled academically and prior to UNL's decision to expel him, Plaintiff maintained an unblemished disciplinary record.

17.    With respect to cases involving allegations of sexual misconduct, UNL's Student Code of Conduct (the "Student Code"), Appendix A, entitled "Response to Allegations of Student Sexual Misconduct," states at its outset:

> "Beginning with the University of Nebraska charter in 1869, Nebraska law has provided that no person shall be deprived of the privileges of this institution because of sex. Discrimination on the basis of sex is also prohibited by Federal law."

### Directives from the Office for Civil Rights

18.    On April 4, 2011, the Office for Civil Rights ("OCR") of the U.S. Department of Education ("DOE") issued a guidance letter to colleges and universities in the United States, widely known as the "Dear Colleague Letter" ("DCL"). The letter advised recipients that sexual violence constitutes sexual harassment within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.* and its regulations, and directed schools to "take immediate action to eliminate the harassment, prevent its recurrence, and address its effects."

19.    On April 29, 2014, OCR issued additional directives to colleges and universities in the form of a guidance document titled *Questions and Answers on Title IX and Sexual Violence* ("Q&A"). Like the DCL, the Q&A was aimed at addressing educational institutions' sexual misconduct policies, including the procedures schools "must" have in place "to prevent sexual violence and resolve complaints" and the elements that "should be included in a school's procedures for responding to complaints of sexual violence."

20.     The Student Code, under which Plaintiff was adjudicated, is dated May 2014.

21.     Aside from the Student Code, UNL has developed guidance for students and faculty to help educate them about sexual misconduct. On its website entitled "About Title IX" (https://www.unl.edu/equity/about-title-ix), it is stated, "Consent can be withdrawn at any time. If a person communicates consent, but then changes his or her mind, consent no longer exists." This guidance does not require the person consenting to communicate consent or lack of consent, just that they change their mind. The corollary to this is that consent can also be given at any time and if a person communicates non-consent, but then changes his or her mind, consent then exists.

22.     Defendant Board of Regents reviewed and authorized the Student Code and other guidance in its current form.

### UNL's Policy and Procedures

23.     UNL's Student Code, to which Plaintiff was subject at the time of the alleged events, sets forth the sexual misconduct policy by which UNL students who have been accused of violating one or more of the enumerated offenses are investigated and, possibly, disciplined.

24.     Relevant to the instant matter is the process by which complaints of sexual misconduct are investigated and adjudicated after a report of alleged sexual misconduct is made to UNL's Title IX Coordinator.

25.     UNL has a full time Title IX Coordinator, Tami Strickman.

26.     According to UNL Policy Memorandum 2015-06, the Title IX Coordinator has primary jurisdiction for overseeing and coordinating efforts to comply with and carry out UNL's responsibilities under Title IX, including:

a. UNL's responses to all complaints involving possible sex discrimination/harassment, even if a complaint or report is initially received by another department or office or includes other potential violations of University policies or codes of conduct. Where alleged Title IX conduct is intermingled with other non-Title IX conduct, investigation of alleged Title IX conduct takes precedence and no investigation of intermingled non-Title IX conduct may proceed without the Title IX Coordinator's approval and coordination.

b. Design, coordination and operation of all aspects of a Title IX investigation, including but not limited to, the establishment and utilization of interim measures, resources, determinations and recommended sanctions.

c. Review and development of Title IX complaint administrative resolution and appeal processes to ensure compliance with Title IX requirements.

d. Drafting and revision of campus-wide policies and procedures relating to Title IX, including sexual misconduct complaint procedures.

e. Campus-wide training relating to Title IX.

27.    Upon receipt of a complaint alleging sexual misconduct, the Conduct Officer or Title IX Coordinator shall conduct an investigation to determine if the allegation(s) have merit. Student Code, Appendix A (2d).

28.    If the investigator determines by the greater weight of the evidence that a violation occurred, a recommended disposition should be included in the investigator's report. If the investigation determines it is more likely than not that the Respondent did not violate the Student Code, the complaint may be dismissed without further proceedings. Student Code, Appendix A (2d).

29. The complaining party has access to accommodations that UNL will provide if reasonably available. No similar accommodations are provided to a Respondent. Accommodations available to a complaining party include:

a. Change of an on-campus student's housing to a different on-campus location;

b. Assistance from the University in completing the relocation;

c. Arranging to end a University housing contract and/or adjusting a student account balance for refund;

d. Rescheduling an exam, paper, or assignment;

e. Taking an incomplete in a class;

f. Transferring between class sections;

g. Temporary withdrawal;

h. Alternative course completion options;

i. Arranging to complete a course or lectures via distance education methods with the assistance of technology;

j. Providing increased security at location or activities.

30. Upon information and belief, Jane Roe requested accommodations including rescheduling an exam, paper, or assignment, taking an incomplete in a class, and utilizing alternative course completion options.

31. Pending completion of an investigation or University Conduct Proceedings, the Student Affairs Officer may at any time temporarily suspend a student when the Student Affairs Officer finds and believes from information coming to his or her attention that the presence of the Respondent on the University premises would seriously disrupt normal

operation of the University or constitute an immediate harm, threat of harm, hostile environment and/or danger to the health, safety, or welfare of the Respondent, the Complainant, any person allegedly subject to sexual misconduct, or any member of the University community. The Student Affairs Officer should work with the appropriate academic Dean in making the decision to discontinue the Respondent's continued participation as a student prior to the completion of the formal proceedings.  Student Code, Appendix A(3d).

32.     Both a Respondent and the Complainant have the right to see sexual misconduct charges in written form.  Student Code, Appendix A(5b).

33.     Both a Respondent and the Complainant have a right to prepare a written statement in advance of a formal hearing. Both parties will have the right to view each other's statement.  Student Code, Appendix A(5e).

34.     The Student Code states, "A Respondent and the Complainant have the right to hear all evidence, present evidence, testify, and to hear and submit questions for witnesses during formal hearings."  Student Code, Appendix A(5g).

35.     However, "[d]irect questioning of the witnesses by the Respondent and Complainant may be limited. The Conduct Officer presiding at the hearing or Chair of the Conduct Board may control questioning by requiring the Respondent and Complainant to submit questions in writing to determine if the questions are appropriate, and then the presiding Conduct Officer or Chair may pose questions to the witness."  Student Code, Appendix A(5g)(i).

36.     The determination of the merits of each case shall be made using a greater weight of the evidence standard, meaning it is more likely than not that a proposition (such

as violation of the Code) was proven.  Student Code, Appendix A(4f).

37.    The burden of proof shall rest upon the Conduct Officer or Complainant bringing the misconduct charge. A Respondent is presumed not to be in violation of the Code until proven otherwise.  Student Code, Appendix A(4g).

38.    A Respondent and the Complainant have the right to be notified of the decision rendered. Any initial, interim, and final decision to resolve disciplinary matters must include a statement of any University sanction imposed together with the rationale for the decision. Student Code, Appendix A(5k).

39.    Both a Respondent and the Complainant shall have the right to attend a pre-hearing conference to discuss the issues and facts that will be presented at the hearing, to exchange information about witnesses likely to be called, answer procedural questions, and settle those matters which may be agreeably concluded. The conference will not be used to settle the issue of whether or not the violation was committed or to challenge any recommended sanctions. This conference shall be held at least two (2) days prior to the scheduled hearing. Students will be instructed about the use of past sexual behavior of the Complainant or past sexual assault by the Respondent as evidence at the hearing. In most situations, evidence of the past sexual history of either the Respondent or the Complainant will not be admitted at the hearing except in very limited situations.  Student Code, Appendix A(7a).

40.    During the hearing, the Respondent(s), the Complainant, and the Conduct Officer shall have the right to hear all evidence, present evidence, testify, and to hear and question witnesses.  Student Code, Appendix A(7cvi).

41.    During the hearing, pertinent records, facts, reports, and statements may be accepted as evidence for consideration by a presiding Conduct Officer or Conduct Board.

Evidence which possesses probative value commonly accepted by reasonably prudent persons in the conduct of their affairs may be admitted and given probative effect. Incompetent, irrelevant, immaterial, and unduly repetitious evidence should be excluded. The rules of privilege recognized by law shall be given effect. Evidence that would not be admissible in a State Court criminal proceedings by reason of the method or manner in which it was acquired shall not be admitted.  Student Code, Appendix A(7cviii).

42.     After the hearing, the Conduct Board shall determine by simple majority vote whether or not the University Suspension or University Expulsion is warranted. The decision of a presiding Conduct Officer or Conduct Board shall be based solely upon evidence introduced and received at the hearing.  Student Code, Appendix A(7d).

43.     University expulsion is the most severe sanction available, and the only sanction that becomes a part of the student's permanent academic record.

44.     A student may appeal the decision of the Conduct Board for the following purposes: (i) To determine whether the original hearing was conducted fairly in light of the charges and evidence presented, and in conformity with prescribed procedures giving the complaining party a reasonable opportunity to prepare and present evidence that the Code was violated, and giving the Respondent a reasonable opportunity to prepare and to present a rebuttal of those allegations; and(ii) To determine whether the sanction(s) imposed were appropriate.  Student Code, Appendix A(9c).

45.     Although UNL promised John Doe these (and other) rights, Defendants nevertheless treated Doe in a manner that violated his rights under the Student Code, Title IX, and other state laws, as set forth more fully below.

46.     Significantly, on September 22, 2017, the OCR rescinded the "2011 Dear Colleague Letter" and put in place an interim guidance while the current administration reviews and revises its practices with regard to the adjudication of complaints of sexual misconduct on college campuses receiving federal funding. *See, e.g.,* https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct.

47.     The interim guidance allows schools the discretion to apply either the preponderance of the evidence standard or the clear and convincing evidence standard.

48.     Applying the less stringent standard of the preponderance of the evidence to offenses that carry with them the most severe sanction is unfair and, ultimately, out of step with the goal of gender equity in Title IX-related proceedings. *See* "Q&A on Campus Sexual Misconduct," available at https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf.

### Pressure on UNL to Expel Alleged Perpetrators

49.     In the wake of the "2011 Dear Colleague Letter", as well as the additional "2014 Q&A", the DOE commenced numerous investigations into colleges and universities, with the underlying threat that those not in compliance stood to lose federal funding.

50.     Federal funding is a major source of income for UNL.

51.     Following issuance of the 2011 Dear Colleague Letter, the University of Nebraska Board of Regents updated the University's policies to address, increase awareness, and prevent sexual misconduct, including increased training and a requirement that each campus must designate a Title IX officer.

52.     Despite the foregoing, UNL found itself on the receiving end of several such investigations by the Department of Education, at least two of which are currently pending.

53.     The case involving John Doe arose during a critical period at UNL in which the University faced mounting criticism concerning its handling of prior allegations of sexual assault.

54.     Specifically, UNL students openly and vocally accused the University of not taking allegations of sexual misconduct seriously enough and of failing to harshly punish perpetrators of sexual assault.

55.     As a consequence of the OCR investigations, lawsuits and media scrutiny, UNL was under enormous pressure to show it was willing to take a hard line against students accused of sexual assault in order to dispel the notion that its campus was an unfriendly and unsafe environment.

56.     When students enter into a Title IX disciplinary matter at UNL, the institution will provide a vastly disproportionate number of support services to the complainant, who upon information and belief is female in the overwhelming majority of cases.

57.     For example, UNL promotes a program called "Voices of Hope," that provides confidential "advocates" who are available 24 hours a day.  Its website links directly to the Lincoln Police Department and the UNL Police, and includes information regarding preservation of evidence, and even advises that, "If you are confused about details of the order of events, this is normal.  A traumatic event makes it difficult to remember things as clearly as you normally do."  Upon information and belief, there are no support services offered by UNL to respondents, who are disproportionately male.

58.     Other resources UNL recommends to complainants include the National Sexual Assault Hotline, UNL Victim Advocate, Counseling and Psychological Services, Women's' Care Counselors, Psychological Consultation Center, Counseling and School Psychological

Clinic, and Employee Assistance Program.

59.    The advice and counsel complainants receive is from UNL staff who have been trained in the context of adjudicating alleged violations of the Student Code. As a result, complainants are frequently better prepared by UNL staff to present a case before the Conduct Board.

60.    Plaintiff himself became the victim of a vicious and vindictive campaign by Jane Roe to get him expelled from UNL.

### The Complaint by Jane Roe Against Plaintiff

61.    Upon information and belief, in November 2017, Jane Roe filed a complaint alleging, *inter alia,* instances of sexual assault by John Doe that occurred as much as a year and a half prior: March 2016, July 14, 2017, and July 24, 2017, with none of the alleged incidents having occurred on campus or even during a period in which the Plaintiff or Jane Roe were enrolled in classes at the University.  Jane Roe also alleged sexual harassment, to wit, that Plaintiff had on a single, unreported incident touched her thigh during an orientation presentation at UNL in August 2016 (which was found to be unsubstantiated).

62.    Jane Roe admitted to UNL that she and the Plaintiff had been in a dating relationship from January 2016 to July 2017, for essentially over a year after her first allegation of assault.

63.    The two 2017 sexual assault incidents reported by Jane Roe allegedly took place at Jane Roe's private, off-campus apartment, which was not in any way affiliated with UNL. The March 2016 sexual assault incident allegedly took place at Plaintiff's off-campus home, which was not in any way affiliated with UNL.  During these alleged incidents, neither John Doe or Jane Roe were enrolled in or attending any classes at the University.

64.   Following the filing of her complaint, Jane Roe did not request any interim protective measures against John Doe and the two communicated regularly and saw each other on campus for almost a semester prior to Jane Roe's allegations without Jane Roe reporting a single further incident.

65.   John Doe received a letter dated December 21, 2017, from Meagan Counley, UNL Title IX Deputy Coordinator, regarding Jane Roe's allegations.  Ms. Counley's letter alleged that John Doe violated UNL's Student Code by committing "sexual harassment" and "sexual assault."

66.   Sexual assault was defined in the policy as follows: "'Sexual assault' is committed when an actor subjects a person to sexual penetration (i) without the consent of the person, (ii) when the actor knew or should have known that the person was mentally or physically incapable of resisting or appreciating the nature of the person's own conduct, or (iii) when the actor is nineteen years of age or older and the person is at least twelve but less than sixteen years of age."

67.   Plaintiff submitted a written response to Ms. Counley by letter dated January 1, 2018, denying all the allegations.

68.   Ms. Counley conducted an investigation; however, the agency record is not readily available to John Doe because UNL has refused to provide a copy of the record, and has only made the record available for inspection on the premises of UNL.  No copies were allowed, but the record contained over 500 pages to make it very difficult and time consuming for Plaintiff to review or address.

69.   By letter dated April 6, 2018, Ms. Counley informed Plaintiff of the outcome of her investigation finding that Plaintiff, more likely than not, committed sexual assault under

the Student Code on July 24, 2017, but that the remainder of the allegations had been resolved in his favor and no violations were substantiated.

### *The alleged March 2016 incident at Plaintiff's home.*

70.     In November 2017, Jane Roe reported that in March of 2016—over a year and a half earlier--Plaintiff sexually assaulted her at Plaintiff's off-campus home when she was too intoxicated to give informed consent.

71.     Plaintiff and Jane Roe were in a dating relationship at this time, and shortly after the alleged assault Jane Roe invited the Plaintiff to travel with her to meet and stay with her family, but never mentioned an alleged assault to the Plaintiff or to her family.

72.     Ms. Counley's investigation found that, despite Jane Roe's claim, Jane Roe did not allege any contact or penetration, and that Jane Roe based her allegation only on the fact that Plaintiff did not have clothes on, and his movements.

73.     Plaintiff denied ever having sex with Jane Roe when she was incapacitated to give informed consent.

74.     Ms. Counley found that there was insufficient evidence of a Student Code violation.

### *The alleged August 2017 incident involving leg touching.*

75.     In November 2017, Jane Roe reported that in August 2016 (over a year earlier) Plaintiff had sexually harassed her by stroking her thigh, on the campus of UNL.

76.     Plaintiff and Jane Roe were in a dating relationship at this time.

77.     Plaintiff had no recollection of the alleged incident and Jane Roe had never addressed Plaintiff about this incident previously or reported it to school authorities.

78.     Ms. Counley found that no Student Code violation occurred.

***The alleged July 14, 2017, incident at Jane Roe's apartment.***

79.     Jane Roe reported that on July 14, 2017, John Doe sexually assaulted her at her off-campus apartment by having sex with her without her consent in the shower.

80.     Plaintiff and Jane Roe were in a dating relationship at this time.

81.     Although Plaintiff *admitted* sexual contact, Ms. Counley's investigation found that there was insufficient evidence to support a violation.

82.     Specifically, Ms. Counley's investigation found: that Jane Roe reported Plaintiff had joined her in the shower and had sexual intercourse with her without her consent; that Jane Roe reported she might have said no and froze; that Plaintiff confirmed that he and Jane Roe had sex in the shower, but it was consensual: and that Jane Roe was an active participant.

83.     Ms. Counley noted that there were no witnesses or evidence to corroborate either party's claim.

***The alleged July 24, 2017, incident at Jane Roe's apartment.***

84.     Jane Roe reported that on July 24, 2017, ten days after the alleged sexual assault in her shower at her off-campus apartment, she invited Plaintiff back to her apartment again to tell him about her sick aunt, and that Plaintiff assaulted her at her apartment with nonconsensual sexual contact.

85.     Ms. Counley's investigation noted that Jane Roe reported not wanting to have sex because Plaintiff had a girlfriend.

86.     Plaintiff provided information to Ms. Counley indicating that on the date in question, Jane Roe had invited Plaintiff into her apartment, and that despite Jane Roe initially not wanting to have sex because she claimed Plaintiff had a girlfriend and she did not want to "enable him to cheat," that the subsequent sexual activity was consensual, and that Jane

Roe was an active participant, including digitally stimulating herself during the sexual encounter and requesting that Plaintiff return the following evening.

87.    Specifically, Plaintiff noted, following sexual contact, Jane Roe complained of the brevity and invited him back the next night so that he could redeem himself.

88.    Plaintiff did not return the following evening.

89.    In his statement to Ms. Counley, Plaintiff noted: 1) Jane Roe had some psychiatric problems for which Plaintiff, throughout the course of their relationship, had insisted she seek counseling and begin treatment or he would no longer date her; 2) Jane Roe had been violent against Plaintiff on numerous occasions; 3) Jane Roe had previously falsely reported to police that Plaintiff had stolen her firearm, when in fact, at Jane Roe's request, Plaintiff had taken the firearm because Jane Roe feared she would kill herself; 4) Jane Roe had lied to her friends and classmates about the nature of their sexual relationship; 5) Jane Roe had stolen a Kindle Fire from Plaintiff, assumed Plaintiff's identity online, and contacted Plaintiff's female friends on Facebook to admit he had cheated on them because Jane Roe had been living with Plaintiff for over a year (when in fact, Jane Roe had never resided with him); 6) Plaintiff had witnessed Jane Roe try to hang herself in front of him when he requested she leave his residence for lying to him and from that point he had stopped trying to confront her when she made absurd allegations about him; 7) while attending UNL Jane Roe was receiving by mail about a pound of cannabis per month from a friend in California that she used to self-medicate her anxiety, in addition to other illegal street drugs and unlawfully purchased controlled substances, and she was also selling cannabis to other UNL students; and 8) it was Jane Roe who had repeatedly, through the course of their relationship, pressured Plaintiff into sexual contact on numerous occasions and was verbally abusive; however,

Plaintiff perceived Jane Roe's behavior was due to unsuccessfully treated mental illness and he helped to keep Jane Roe enrolled at UNL when he personally requested an accommodation for her anxiety disorder when she indicated her concern of failing out of school in the beginning of 2016, pressured Jane Roe to seek medical treatment, and, by her account, remained a positive force in their relationship.

90.     Plaintiff noted that Jane Roe reported her allegations right before the end of the fall 2017 semester, years to months after the alleged allegations would have occurred, after facing the loss of her teaching assistantship and expulsion for an inconsistent academic performance that had begun before her allegations against the Plaintiff.

91.     Plaintiff revealed that Jane Roe had self-reported a history of sexual assault and abuse, a troubled childhood, mentally ill parents, institutionalization in high school for bulimia and suicidal ideation, and substance abuse.

92.     Plaintiff emphatically denied he was guilty of any wrongdoing and was, as Jane Roe had stated, the most positive force in her life for keeping her at UNL.

93.     Plaintiff noted Jane Roe had requested he join her in her apartment for sex both before and after any allegations of assault, and that on numerous occasions she pressured him to have sexual relations with her, including when he was incapacitated and incapable of consent; however, Jane Roe was never investigated.

94.     Also considered by Ms. Counley was a recorded telephone call between Jane Roe and Plaintiff in October 2017, where Plaintiff discussed the sexual encounter, including that Jane Roe had initially not wanted to have sex due to Plaintiff having a girlfriend, but that the subsequent sexual activity was consensual.

95.     Ms. Counley determined that Plaintiff committed sexual assault as described in

the Student Code, and recommended as a sanction "University Expulsion: Permanent separation of the student from the university, without the possibility of readmission."

### *The UNL Conduct Board Hearing*

96.     Based on Ms. Counley's findings regarding the July 24, 2017 incident, Plaintiff demanded a UNL Conduct Board hearing.

97.     A hearing was held before the UNL Conduct Board on May 31, 2018.

98.     Prior to a UNL Conduct Board hearing, Plaintiff was informed to produce a witness and exhibit list and, based on that request, Plaintiff requested to be provided additional information on the hearing, the format, and standard of review and whether it was *de novo.*

99.     Plaintiff was informed by UNL all of that would be covered at the prehearing conference, which was two days before the hearing and after Plaintiff's opportunity to review the evidence in anticipation of the hearing.

100.    Both Jane Roe and representatives of UNL prosecuting the case against Plaintiff met with the hearing officer prior to and without Plaintiff present to discuss the evidence and what would be admitted and what would not be admitted into evidence.

101.    When Plaintiff met with the hearing officer and representatives of UNL who were prosecuting the case against Plaintiff, Plaintiff was informed he was not to introduce or discuss evidence of Jane Roe's mental health disorders or the other allegations of assault made by Jane Roe against Plaintiff that were "favorably" adjudicated for Plaintiff, including Jane Roe's allegation that Plaintiff had sexually assaulted her in her apartment 10 days prior to the alleged July 24, 2017, incident, but allowed him to return to her apartment because her aunt was sick and she needed someone to talk to.

102.   between them.

103.   Despite his constitutional right to cross examine adverse witnesses, Plaintiff was not allowed to question Jane Roe, Jane Roe did not testify at the hearing, and Jane Roe had also not allowed herself be recorded in any of the allegations against the Plaintiff; however, Ms. Counley admitted at the hearing that Jane Roe's versions of the alleged July 24, 2018, assault were inconsistent with statements Jane Roe made to other witnesses.

104.   Ms. Counley also testified at the hearing that a recorded phone call of Jane Roe and Plaintiff that was reduced to a transcript, which UNL claimed was evidence of Plaintiff admitting guilt, did not contain any admission of wrongdoing on the part of Plaintiff.

105.   In contrast, Plaintiff presented evidence at the hearing, that although Jane Roe had initially refused the sexual advance of the Plaintiff "because [you] have a girlfriend," the sexual encounter with Jane Roe was consensual, both objectively when it occurred, and based upon the parties' mutual agreement and course of conduct in their year-and-half dating relationship.

106.   Plaintiff noted that Jane Roe admitted to Ms. Counley that she was unaware of any bruising, torn clothes, or physical evidence consistent with an assault or forced penetration.

107.   Plaintiff also noted that UNL lacked jurisdiction over the matter because, apart from the fact that Plaintiff and Jane Roe—two nontraditional graduate students—meeting at UNL, the alleged incident did not occur on campus and neither Plaintiff or Jane Roe were enrolled in classes at the time.

108.   Plaintiff argued that without the ability to subpoena documents, take depositions, or even cross examine Jane Roe, the investigation at UNL was not adequate for

Plaintiff to present an informed defense.

109.    Further, Plaintiff pointed out that Jane Roe had not sought a protection order or filed a civil complaint against him and, that local police had taken no action nor conducted any investigation.

110.    Further, Plaintiff was not allowed to present evidence regarding Jane Roe's history of providing false information to the police and Plaintiff was not allowed to present evidence about the other accusations of assault Jane Roe reported to UNL—including the nearly identical claims of sexual assault—that were found to be unsubstantiated following Ms. Counley's investigation and that Jane Roe had claimed had occurred just 10 days prior.

111.    Plaintiff was not allowed to present evidence regarding Jane Roe's mental state at the time she reported the allegations against Plaintiff to UNL, although Plaintiff had documented he sought an accommodation for Jane Roe at the university for mental health issues, had contacted medical professionals on behalf of Jane Roe when she expressed suicidal ideation, and had called the police on two occasions when Jane Roe had threatened to kill herself.

112.    At his hearing, the hearing officers, over Plaintiff's objection under both the best evidence rule and the transcript's failure to capture his obvious sarcasm during the phone conversation with Jane Roe, refused to admit or listen to the actual telephone recording in which they subsequently found Plaintiff had "admitted" guilt, but only a written transcript of a telephone call between Jane Roe and Plaintiff, even after Ms. Counley testified at no time did Plaintiff admit any wrongdoing in the phone conversation.

113.    Only by quoting out of context from the call transcript -- which Ms. Counley testified was only one of several telephone calls between the parties after the third alleged

assault – the hearing panel found Plaintiff had *admitted* wrongdoing; however, Ms. Counley, who had actually listened to the recording, not only testified at the hearing the Plaintiff had admitted no wrongdoing in the October 2017 telephone conversation, but that there were other conversations between the Plaintiff and Jane Roe where there was no discussion of an assault whatsoever, but she did not create transcripts because they were not *relevant.*

114.    Plaintiff noted that the additional telephone calls were relevant, but the recordings were not considered by the Conduct Board.

115.    Plaintiff made an offer of proof that included his approximate 120 pages of history on his relationship with Jane Roe, excerpts of key witnesses that Ms. Counley stated testified according to Plaintiff's summaries, and timeline which documented the alleged three assaults and the behavior of Jane Roe before and after.

116.    Following the hearing, the Conduct Board issued its decision by letter (the "Decision Letter") dated June 6, 2018, wherein it adopted in full Ms. Counley's finding of cause for expulsion, but based only on the finding that Plaintiff had "admitted" culpability in a "recent" October 2017 telephone conversation for the July 24, 2017, assault. The Conduct Board did not address the obvious contradiction with Ms. Counley's hearing testimony that at no time in the recorded October 2017 phone conversation did Plaintiff admit any wrongdoing. Again the Conduct Board never heard the recording, they only viewed a transcript that had been edited by Jane Roe.

117.    Further, the Decision Letter makes no finding regarding UNL's jurisdiction in this matter.

118.    The Decision Letter does not specifically identify which subsection of the Student Code it found Plaintiff violated.

119.    The Decision Letter contains no finding regarding the credibility of witnesses, including Jane Roe, who refused to testify against plaintiff at the *de novo* hearing.

120.    The Decision Letter does not address the fact that Ms. Counley, the investigator whose findings the Conduct Board adopted entirely, testified at the hearing that the recorded phone conversations between Plaintiff and Jane Roe did NOT contain any admission of wrongdoing by Plaintiff.  This is significant because the recorded phone conversation is the *only* evidence cited by the Conduct Board in its Decision Letter.

121.    The Decision Letter states that Plaintiff shall have 7 "University business days" to appeal the Conduct Board's decision, even though Plaintiff was advised by the Conduct Board at the hearing that he could appeal its decision within 14 days.

### *Plaintiff's Appeal of the Decision of the Conduct Board.*

122.    On June 15, 2018, Plaintiff submitted his appeal of the Conduct Board's decision.

123.    The Student Code describes the grounds for appeals:

    a.  To determine whether the original hearing was conducted fairly in light of the charges and evidence presented, and in conformity with prescribed procedures giving the complaining party a reasonable opportunity to prepare and present evidence that the Code was violated, and giving the Respondent a reasonable opportunity to prepare and to present a rebuttal of those allegations.

    b.  To determine whether the sanction(s) imposed were appropriate.

124.    Plaintiff appealed the Conduct Board's decision under both grounds.  Plaintiff also again asserted that UNL acted without jurisdiction, and he incorporated by reference all defenses set forth at the hearing.

125.     Plaintiff further pointed out that neither Plaintiff nor his advisor were allowed to receive a copy of the record in this matter, but were only allowed to view the record on UNL premises, severely impairing Plaintiff's ability to effectively defend himself against the accusations.

126.     As to UNL's lack of jurisdiction, Plaintiff pointed out that the Student Code describes circumstances in which UNL may exercise its authority and impose sanctions upon students.    The Student Code, Article III, A(1), states that the Student Code shall apply to conduct that occurs:

      a.   On University premises, including all University of Nebraska locations, physical campuses and any University affiliated programs located in other states or countries.

      b.   Off University premises, if the conduct is determined by the Dean of Students to adversely affect the University community, its members, its reputation or the pursuit of its objectives.

127.     It is uncontroverted that the conduct at issue in this matter took place off of "University premises."

128.     Therefore, the university could only obtain jurisdiction under subsection (b), above, by showing that the conduct, as determined by the Dean of Students, adversely affected the University community, its members, its reputation or the pursuit of its objectives. This showing was not been made, and it is not reflected anywhere in the record.

129.     The Student Code requires that "[t]he decision of a presiding Conduct Officer or Conduct Board shall be based solely upon evidence introduced and received at the hearing." Code, Appendix A, 7(d) (underline added).   No evidence was introduced and

received at the hearing in this matter concerning whether the Dean of Students determined that subsection (b), above, applies to the conduct at issue in this matter, and no finding in this regard was addressed by the Board.

130.    UNL, under the provisions of its own Student Code, did not obtain jurisdiction over this off-campus incident, and had no authority to discipline Plaintiff.result.

131.    Plaintiff argued in the appeal that the Conduct board failed to make any finding regarding which subsection of the Student Code it found he violated.

132.    Plaintiff argued in the appeal that he was denied the right to question witnesses including his accuser, Jane Roe, who offered no testimony and whose credibility was therefore not subject to review by the Conduct Board.

133.    Plaintiff argued that he was denied the opportunity to present relevant evidence, including evidence of Jane Roe's past untruthfulness in making police reports, her mental mental state, her other unsubstantiated allegations, her motive to exaggerate, and that the Conduct Board's finding that Plaintiff was in violation of the Student Code "based on the greater weight of the evidence available to it" was clearly erroneous and in violation of his constitutional rights in consideration of the state action.

134.    Plaintiff argued that the sanction of expulsion with no possibility of readmission – the only penalty that would be placed on his academic transcript -- was overly harsh in light of the totality of the circumstances.

135.    Plaintiff requested reversal of the Conduct Board.

*UNL's final agency action.*

136.    By letter dated July 26, 2018, signed by Laurie Bellows, Interim Vice Chancellor of Student Affairs, UNL denied Plaintiff's appeal of the decision of the Conduct

Board.

137.    In response to Plaintiff's assertion that UNL lacked jurisdiction over the off-campus allegations, UNL stated that "the conduct alleged—nonconsensual sexual intercourse—is so severe that its purported occurrence against a community member can be *presumed* to adversely affect the University community, its members, its reputation, or the pursuit of its objectives." (Emphasis added).  And that therefore, no finding by the Dean of Students was necessary to establish jurisdiction; however, UNL's reasoning is contrary to its own Student Code that requires the Dean of Students to make a finding when the alleged conduct occurs off-campus that the conduct adversely affects the University community, its members, its reputation or the pursuit of its objectives.

138.    Further, the alleged assault not only occurred off-campus, but when neither the Plaintiff or Jane Roe were enrolled in classes, at the end of a consensual dating relationship between two nontraditional graduate students, who subsequently had a semester in classes together without incident at UNL, before Jane Roe filed her complaint.

139.    Regardless of the fact that the Student Code was violated by the Dean of Students' failure to make a finding regarding jurisdiction, UNL reasoned, the Dean of Students "was made aware of the investigation and has the authority to inquire about such an investigation and its progress."

140.    Finally, regarding Plaintiff's jurisdictional challenge, UNL stated that even if the Student Code requires a "formalized finding" of jurisdiction by the Dean of Students, the lack thereof is "harmless error because the adverse effect of [Plaintiff]'s conduct on the University community is apparent from the record;" however, Ms. Bellows failed to indicate what part of the record she was referring to that made "apparent" any effect on the University

community.

141.    Regarding Plaintiff's claims that he was not allowed to question his accuser or even receive a recording of her statements, or to present evidence regarding Jane Roe's past untruthfulness and mental state, UNL simply claimed it is within the Conduct Board's discretion to allow or disallow such requests, despite the fact that excluding these items clearly prejudiced Plaintiff's defense when Ms. Counley noted in the record that Jane Roe's statements to different individuals about the alleged assaults were inconsistent, whereas Plaintiff was consistent and cooperative in his denial of any wrongdoing.

142.    Regarding the fact that the Conduct Board was only allowed to view a redacted version of the investigative file, Ms. Bellows wrote that "[t]he information redacted in the file generally relates to other allegations that were not the subject of the Conduct Review Board's hearing...the redactions do not directly relate to relevant information regarding the underlying incident that gave rise to the finding...sharing this information would not have impacted the hearing or the outcome, which was determined based on evidence that the Board weighted significantly."

143.    In so finding, Ms. Bellows ignored the obvious: Jane Roe's testimony that Plaintiff had previously sexually assaulted her twice, including 10 days before the July 24, 2017, assault in her home, was relevant to Jane Roe's credibility on the last allegation and Plaintiff had argued that it is improbable that someone would invite an attacker back into their home after two prior assaults, much less again, the next night, after a third assault as Jane Roe admitted she had done.

144.    Ms. Bellows finding is clearly erroneous and contrary to law insofar as the redacted information contained, among other things, information regarding very similar

allegations by Jane Roe that were found to be unsubstantiated, including allegations that Jane Roe did not even report for over a year and a half. Further, if "sharing this information would not have impacted the hearing or outcome," then there would be no reason to exclude it. The fact is, the Conduct Board has the ability, indeed the obligation, to make its own assessment regarding the reliability and weight of the evidence, and it was denied the opportunity to do just that.

145.    Ms. Bellows made a similar finding regarding information about Jane Roe's mental state that was redacted from the record, writing, "even if information in [Plaintiff]'s assertions relating to the Complainant's mental health and [Plaintiff]'s offer of proof was included in the record before the Conduct Board, it is my opinion … that the information would not have resulted in a change in the decision;" however, the redactions did not merely result in harmless error because they demonstrated a persistent and recurrent pattern by Jane Roe to lie to third parties about the nature of her relationship with Plaintiff.

146.    Finally, regarding Plaintiff's assertion that the sanction imposed was overly harsh, Ms. Bellows disagreed, saying that the alleged conduct was severe, and that such action merits the sanction imposed.

147.    Plaintiffs' transcript will now permanently indicate that he was expelled for non-academic reasons. Plaintiffs' employer was concerned that the allegations could be used to extort money from the employer by other employees who could make similar allegations, and Plaintiff was requested to leave his employment.

148.    As a result of Defendants' unlawful actions, John Doe has suffered immense losses. It will be enormously difficult for John Doe to finish his degree at any four-year institution, let alone one comparable to UNL. Because of the black mark on his transcript,

he will forever have to explain to admissions committees the reason for his expulsion.

149.    John Doe was requested to resign from his employment because of concern, despite the falsity of the allegations, they could be used as a means to extort money from his employer.

150.    John Doe has also experienced extreme emotional, psychological, and physical distress as a result of the investigation process and his expulsion.

151.    The marking of Plaintiff's academic transcript for a violation of the Student Code will permanently deny Plaintiff educational and career opportunities as he will forever be forced to explain that he was found responsible for sexual assault. Plaintiff may be unable to pursue a career in professions which require a license or background check, which will permanently alter the trajectory of John Doe's life.

## COUNT I
### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* Erroneous Outcome and Unjustly Severe Penalty
### (UNL)

152.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

153.    Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

154.    Title IX of the Education Amendments of 1972 applies to all public and private educational institutions that receive federal funding, which includes Defendant UNL.

155.    Title IX may be violated by a school's failure to prevent or remedy sexual harassment or sexual assault or by the imposition of university discipline where gender is a

motivating factor in the decision to discipline.

156.     Plaintiff was innocent and wrongly found to have committed a violation of Defendant UNL's Sexual Misconduct Policy, and gender bias was a motivating factor.

157.     Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the *prompt and equitable resolution* of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (*emphasis added*). Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.

158.     The "prompt and equitable" procedures that a school must implement include, at a minimum:

- "Notice . . . of the procedure, including where complaints may be filed";

- "Application of the procedure to complaints alleging [sexual] harassment...";

- "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

- "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

- "Notice to the parties of the outcome of the complaint......"

159.     Based on the foregoing, Defendants failed to conduct an adequate, reliable, and impartial investigation of the complaints.

160.     Particular circumstances suggest that gender bias was a motivating factor behind the erroneous findings and the decision to impose an unjustly severe penalty upon Plaintiff. These circumstances include, *inter alia:*

a.   UNL support services provide a plethora of information, advocacy, and support for complainants, while no similar services are offered to respondents.

b.   Upon information and belief, the vast majority of students utilizing the support services are female and UNL funded support services, including the Title IX officers, provide support services primarily to women.

c.   When students enter into a Title IX disciplinary matter at UNL, the institution will provide a vastly disproportionate number of support services to the complainant, who upon information and belief are overwhelmingly female.

d.   Upon information and belief, Defendants actively adopted the Title IX Coordinator's mission of increasing reporting of alleged sexual misconduct at UNL. Unfortunately, the Defendants did so at the expense of properly vetting complaints of sexual misconduct.

161.   As demonstrated above, it is apparent that UNL views all women who simply make complaints of alleged sexual misconduct, as "victims." This attitude and policy implementation clearly leads to gender bias against males. The Association of Title IX Administrators published "2014 Whitepaper" entitled *Equity is Such a Lonely Word*, includes training materials presented to college Title IX departments and states: "victims have historically been accorded 3/5 of the rights of an accused individual (or less), and **victims are typically women**, equity may require institutions to recalibrate the pendulum to right the historical imbalance." (emphasis added). Upon information and belief, UNL was a recipient of these training materials.

162.   Plaintiff reported a pattern of sexual harassment and assault by Jane Roe that was uninvestigated and UNL's policies and procedures discriminated against Plaintiff on the basis of his sex and led to an erroneous outcome.

163.   Challenges to university disciplinary proceedings for sex discrimination fall in two categories: (1) "erroneous outcome" cases, in which the claim is that plaintiff was innocent and wrongly found to have committed an offense and gender bias was a motivating factor behind the erroneous findings; and (2) "severity of penalty/selective initiation" cases, in which

the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender.

164.    An "erroneous outcome" occurred in this case because John Doe was innocent and wrongly found to have committed sexual assault and gender bias was a motivating factor.The denial of due process in this case resulted in an "erroneous outcome" based on erroneous and distorted conception of the facts.

165.    Defendant UNL failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of Jane Roe's allegations and subsequent adjudication in a manner that was biased against John Doe. Further, John Doe was severely prejudiced by Defendants limiting his ability to present evidence and question witnesses, among other things.

166.    As discussed above, Defendant UNL has created a victim-centered process in which an accused male student is prosecuted under a presumption of guilt and improperly places the burden of proof on John Doe. Such a one-sided process deprived John Doe, as a male student, of educational opportunities at Defendant UNL on the basis of his sex. Defendant UNL also imposed an unwarranted and unjustly severe sanction on Plaintiff, and gender bias was a motivating factor.

167.    On information and belief, all students that have been suspended and expelled from UNL for sexual misconduct have been male.

168.    Based on the foregoing, Plaintiff was subjected to a biased, prejudiced and unfair process in violation of Title IX designed to find him, the male, responsible for sexual assault and be punished severely for it.

169.    This unlawful discrimination in violation of Title IX proximately caused Plaintiff to sustain substantial injury, damage, and loss, including, but not limited to: mental

anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of educational opportunities; and loss of future employment prospects.

170.   As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT II
### Breach of Contract (All Defendants)

171.   Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

172.   Plaintiff applied to and enrolled at UNL and paid associated fees and expenses.

173.   Plaintiff did so in reliance on the understanding and with the reasonable expectation that UNL would implement and enforce the provisions and policies set forth in its official publications, including its Student Code.

174.   An express contract or, alternatively, a contract implied in law or in fact was formed between Plaintiff and UNL.

175.   The contract contained an implied covenant of good faith and fair dealing. It implicitly guaranteed that any proceedings would be conducted with basic fairness.

176.   Based on the aforementioned facts and circumstances, Defendants breached express and/or implied agreement(s) with Plaintiff, and the covenant of good faith and fair dealing contained therein.

177.   Defendants committed several breaches of their agreements with Plaintiff during the investigation process. A non-exhaustive list of Defendants' breaches includes the

following:

    a.   Defendants failed to follow prescribed procedures, including the Student Code;

    b.   Defendants failed to conduct an unbiased investigation and impartial hearing panel;

    c.   Defendants failed to provide Plaintiff an opportunity to meaningfully defend participate in the hearing by excluding relevant evidence;

    d.   Defendants acted without jurisdiction, and failed to even attempt to make a finding regarding jurisdiction for conduct that occurred entirely off-campus;

    e.   Defendants failed to inform Plaintiff of the specific Student Code provision that he was found to have violated;

    f.   Defendants failed to fairly consider the investigation record prior to deciding that Plaintiff violated the Student Code;

    g.   Defendants failed to provide rationale for the decision, aside from citation to one phone conversation between Plaintiff and Jane Roe;

178.    As a direct and foreseeable consequence of the foregoing breaches, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

179.    Plaintiff is entitled to recover damages for Defendants' breaches of the express and/or implied contractual obligations described above in an amount to be determined at trial.

## COUNT III
### Breach of Contract/Common Law: Denial of Basic Fairness/ Arbitrary and Capricious Decision Making
### (All Defendants)

180.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

181.    Defendants had a duty, either under an express or implied contract or as a matter of common law, to ensure that the proceedings against Plaintiff were conducted in good faith and with basic fairness.

182.    Defendants breached this duty of good faith and basic fairness.

183.    Defendants' breach of the duty to ensure basic fairness proximately caused Plaintiff to sustain substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of educational opportunities; and loss of future career prospects.

184.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial.

## COUNT IV
### Estoppel and Reliance (All Defendants)

185.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

186.    UNL's various policies constitute representations and promises that UNL should have reasonably expected to induce action or forbearance by Plaintiff.

187.    UNL expected or should have expected Plaintiff to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that UNL would not tolerate, and Plaintiff would not suffer, discrimination or harassment by fellow students or faculty members and would not deny Plaintiff his procedural rights should he be accused of a violation of UNL's policies.

188.    Plaintiff relied to his detriment on these express and implied promises and representations made by UNL, by choosing to attend UNL rather than other schools of equal

caliber and paying the required tuition and fees.

189.   Based on the foregoing, UNL is liable to Plaintiff based on Estoppel.

190.   As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

191.   As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial.

## COUNT V
### Review Under the Nebraska Administrative Procedures Act
### (All Defendants)

192.   Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

193.   UNL and the University of Nebraska Board of Regents are state administrative agencies whose decisions may be reviewed by this Court under the Nebraska Administrative Procedures Act.

194.   The Court's review is not subject to narrow statutory criteria, but it is required to make independent factual determinations based upon the agency record, and to render its decision independently of the agency's prior disposition.

195.   The Court shall determine whether the agency acted within its jurisdiction.

196.   UNL acted without jurisdiction in sanctioning Plaintiff for conduct that occurred wholly off-campus, and without making any finding that would give UNL jurisdiction over the off-campus conduct.

197.   UNL's decision is not supported by evidence in the record to a sufficient degree to allow the imposition of the most extreme sanction of expulsion upon Plaintiff. UNL's

decision should be reversed.

198.    As a direct and proximate result of the above conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

199.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i)    on the first cause of action for violation of Title IX of the Education Amendments of 1972, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)    on the second cause of action for breach of contract, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects;

(iii)    on the third cause of action for denial of basic fairness under contract and common law, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and

career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)     on the fourth cause of action for estoppel and reliance, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to past and future economic losses, loss of educational and career opportunities, and loss of future career prospects; and

(v)     on the fifth cause of action, a declaratory judgment, declaring that: (i) the outcome and findings made by UNL should be reversed; (ii) Plaintiff immediately reinstated as a student in good standing and permitted to begin classes during the next available semester; (iv) Plaintiff's disciplinary record be expunged; (v) the record of Plaintiff's expulsion be removed from his education file; and (vi) any record of the complaint against Plaintiff be permanently destroyed; and (vii) awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

DATED: August 27, 2018.

        JOHN DOE, Plaintiff

        REHM, BENNETT, MOORE,
        REHM & OCKANDER, P.C., L.L.O.
        3701 Union Dr., #200
        Lincoln, NE 68516
        (402) 420-1400
        E-mail: rmoore@rehmlaw.com

        For the firm:   /Roger D. Moore
                Roger D. Moore , #21305


        Petefish, Immel, Hird, Johnson, Leibold & Sloan, L.L.P.
        842 Louisiana Street
        Lawrence, Kansas 66044
        (785) 843-0450
        (785) 843-0407 - fax
        mdonnelly@petefishlaw.com


        For the firm:   /sMatt Donnelly
                Matt Donnelly

PRAECIPE

To the Clerk of Said Court:

Please issue summons in the above-entitled action for service by certified mail, with a copy of the Complaint attached thereto for service on the Defendants at:

University of Nebraska
1400 R Street
Lincoln, NE 68588

University of Nebraska Board of Regents
3835 Holdredge Street
Lincoln, NE  68583

      Summons should be mailed and/or sent by electronic mail to Plaintiff's attorney for service by certified mail.


JOHN DOE, Plaintiff

    REHM, BENNETT, MOORE,
    REHM & OCKANDER, P.C., L.L.O.
    3701 Union Dr., #200
    Lincoln, NE 68516
    (402) 420-1400
    E-mail: rmoore@rehmlaw.com

    For the firm:    /Roger D. Moore
               Roger D. Moore , #21305

| Nebraska State Court Form | **MOTION FOR PRO HAC VICE ADMISSION** | Filed in Lancaster District Court<br>Ch.3, Art.1 AppB ***<br>Case Number: D02CI180002880<br>Transaction ID: 0007361830<br>Filing Date: 08/27/2018 05:01:20 PM CDT<br>Neb. Ct. R. §3-122 |

IN THE  DISTRICT            COURT OF  LANCASTER

Perry Pirsch                    ,
             Plaintiff,

v.

University of Nebraska          ,
          Defendant,

Case No. _____

**MOTION FOR PRO HAC VICE ADMISSION**

(To be completed by associated counsel licensed in Nebraska).

Roger Moore              hereby moves this Court to grant Matthew Donnelly        admission pro
  (Attorney)                                                                    (Applicant)
hac vice in the above-captioned case, as co-counsel for the plaintiff/defendant.

Roger Moore              is a resident of Nebraska, duly and regularly admitted to practice in
  (Attorney)
the courts of record of this state, and service may be had in all matters connected with this action.

Roger Moore              , or my designee who shall be licensed to practice in the courts of
  (Attorney)
record of this state, will sign all pleadings, motions, and papers filed in the case, as well as personally

appear at all proceedings before the court, unless excused by the court.

In support of this motion, please see the attached application signed by the applicant.

Wherefore,  Roger Moore                    , respectfully moves this Court for admission pro hac
           (Attorney)
vice for Matthew Donnelly                in the above-captioned case.
    (Applicant)

/s/  Roger Moore
Attorney Name (Bar Number)
Rehm, Bennett, Moore, Rehm & Ockander, P.C, LLO
Firm Name
9202 W. Dodge Road, Ste 203
Street Address/P.O. Box Number
Omaha, NE 68116
City/State/ZIP Code
402-898-9202                    rmoore@rehmlaw.com
Telephone                        E-mail Address

Page 1 of 3 (Motion)
Pro Hac Vice Admission
Ch3Art1AppB Amended 07/2014

Appendix B (Neb. Ct. R. – Chapter 3, Article 1)

| Nebraska State Court Form | **APPLICATION FOR PRO HAC VICE ADMISSION** | Ch.3, Art.1, App.B<br>Amended 07/2014<br><br>Neb. Ct. R. §3-122 |
|---|---|---|

**(To be attached to Motion for Admission Pro Hac Vice)**

Attorney Name: <u>Matthew Donnelly</u>
<div style="text-align:center">(Applicant)</div>

Case Caption: <u>Perry Pirsch</u>          <sup>Vs.</sup> <u>University of Nebraska</u>

Case Number:_____

Court in which you are requesting admission pro hac vice: <u>Lancaster County District Court</u>

<u>Matthew Donnelly</u>_____, desiring admission pro hac vice in the above-stated matter, affirms as follows:

<u>Matthew Donnelly</u>_____ is an attorney admitted and eligible to practice law in
_____ and is a member in good standing in <u>Kansas</u>_____.
<div>          (State(s))                                                                    (State(s))</div>

<u>Matthew Donnelly</u>_____ is not the subject of a disciplinary action or investigation. (If subject to a disciplinary action or investigation, complete next paragraph).

<u>Matthew Donnelly</u>_____ is the subject of a disciplinary action or investigation in
_____ and the name and address of the disciplinary authority is:
<div>          (State(s))</div>

_____.

The nature and status of the disciplinary action or investigation is
_____. (Please attach additional pages if necessary).

<u>Matthew Donnelly</u>_____, upon admission pro hac vice, will be subject to the Rules of Professional Conduct, Neb. Ct. R. of Prof. Cond. §§ 3-501.0 to 3-508.5.

<u>Matthew Donnelly</u>_____ has associated with the following attorney who is duly and regularly admitted to practice in the courts of record of this state, and upon whom service may be had in all matters connected with the action:
Name of Local Counsel and Bar Number: <u>Roger Moore</u>_____.

<u>Matthew Donnelly</u>_____ has paid the $250 fee to the Clerk of the Court.

<div style="margin-left:30%">

<u>/s/ Matthew Donnelly                    23354</u>
Attorney Name (Foreign Bar Number)
<u>Petefish, Immel, Hird, Johnson, Leibold & Sloan, LLP</u>
Firm Name
<u>842 Louisiana Street</u>
Street Address/P.O. Box Number
<u>Lawrence, Kansas 66044</u>
City/State/ZIP Code
<u>785-843-0450</u>          <u>mdonnelly@petefishlaw.com</u>
Telephone                    E-mail Address

</div>

Appendix B (Neb. Ct. R. — Chapter 3, Article 1)

| Nebraska State Court Form | OATH SUBSCRIBED TO BY PRO HAC VICE APPLICANT | Ch.3, Art.1, App.B<br>Amended 07/2014<br>Neb. Ct. R. §3-122 |
|---|---|---|

IN THE  DISTRICT            COURT OF  LANCASTER

Perry Pirsch                    ,

Plaintiff,

v.

University of Nebraska         ,

Defendant.

Case No. _____

**OATH SUBSCRIBED TO BY**
**PRO HAC VICE APPLICANT**

 

I, the undersigned attorney, do solemnly swear that I will support the Constitution of the United States, and the Constitution of the State of Nebraska, and that I will faithfully discharge the duties of an attorney and counselor, according to the best of my ability.

Dated this ____3____ day of _____August_____, 2018 ,

_____
Attorney

Subscribed and sworn to before me this ____3RD____ day of ___AUGUST___, 20 18 .

_____
Person Administering Oath Pursuant to
Neb. Rev. Stat. § 24-1002

Dana Wallert
Notary Public
State of Kansas
My Commission Expires 8/12/21

Page 3 of 3 (Oath)
Pro Hac Vice Admission
Ch3Art1AppB Amended 07/2014

Appendix B (Neb. Ct. R. — Chapter 3, Article 1)

Appendix B adopted April 13, 2011, effective July 1, 2011; amended January 30, 2014; amended July 2, 2014.

Image ID:
D00555605D02

**SUMMONS**

Doc. No.   555605

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

John Doe v. University of Nebraska

Case ID: CI 18     2880

TO:  University of Nebraska

**FILED BY**

Clerk of the Lancaster District Court
08/28/2018

You have been sued by the following plaintiff(s):

    John Doe

Plaintiff's Attorney:     Roger D Moore
Address:                  3701 Union Dr, #200
                          Lincoln, NE 68516-0000

Telephone:                (402) 420-1400

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  AUGUST 28, 2018     BY THE COURT:  _Troy L Clerk_
                                          Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        University of Nebraska
        1400 R Street
        Lincoln, NE 68588

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

## SERVICE RETURN

Doc. No.   555605

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

To:
Case ID: CI 18    2880 John Doe v. University of Nebraska

Received this Summons on _____,_____ . I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return     $  _____

Copy                           _____

Mileage ____miles        _____

   TOTAL                $  _____

Date: _____     BY: _____
                                                        (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                        _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____ .

To: University of Nebraska          From: Roger D Moore
    1400 R Street                          3701 Union Dr, #200
                                                 Lincoln, NE 68516-0000
    Lincoln, NE 68588

# ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID: | **SUMMONS** | |
|---|---|---|
| D00555606D02 | | Doc. No.   555606 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln        NE 68508

John Doe v. University of Nebraska

Case ID: CI 18    2880

TO:  University of Nebraska Board of

**FILED BY**
Clerk of the Lancaster District Court
08/28/2018

You have been sued by the following plaintiff(s):

John Doe

Plaintiff's Attorney:   Roger D Moore
Address:                3701 Union Dr, #200
                        Lincoln, NE 68516-0000

Telephone:              (402) 420-1400

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  AUGUST 28, 2018        BY THE COURT:  _Troy L Clerk_
                                             Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        University of Nebraska Board of
        Regents
        3835 Holdrege St
        Lincoln, NE 68583

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.   555606 |

```
                    LANCASTER DISTRICT COURT
                    575 S. 10th Street - 3rd Floor
                    SEPARATE JUVENILE COURT-4th Floor
                    Lincoln          NE 68508
To:
Case ID: CI 18    2880 John Doe v. University of Nebraska
```

Received this Summons on _____,_____ . I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return     $ _____

Copy                     _____

Mileage ____miles        _____

   TOTAL            $ _____

Date: _____     BY: _____
                                       (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                           _____

Postage $ _____   Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____ .

```
To: University of Nebraska Board of        From: Roger D Moore
    Regents                                      3701 Union Dr, #200
    3835 Holdrege St                             Lincoln, NE 68516-0000
    Lincoln, NE 68583
```

# ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI180002880
Transaction ID: 0007454750
Filing Date: 09/14/2018 12:57:36 PM CDT

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| JOHN DOE, | ) | CASE NO. CI18-2880 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MOTION TO REMOVE FROM |
| vs. | ) | PUBLIC VIEWING |
| | ) | |
| UNIVERSITY OF NEBRASKA, | ) | |
| UNIVERSITY OF NEBRASKA BOARD | ) | |
| OF REGENTS, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, John Doe, by and through his attorney of record, hereby moves the court to enter an order removing the pleadings in this matter from public viewing. In support of this Motion, counsel states this matter concerns a Title IX matter and contains sensitive allegations which could be embarrassing for the Plaintiff and that this sort of claim dictates and warrants anonymity.

JOHN DOE, Plaintiff

REHM, BENNETT, MOORE,
REHM & OCKANDER, P.C., L.L.O.
3701 Union Dr., #200
Lincoln, NE 68516
(402) 420-1400
E-mail: rmoore@rehmlaw.com

For the firm: /s/Roger D. Moore
Roger D. Moore, #21305

PETEFISH, IMMEL, HIRD, JOHNSON,
LEIBOLD & SLOAN, LLP
842 Louisiana Street
Lawrence, KS 66044
(785) 843-0450
E-mail: mdonnelly@petefishlaw.com

For the firm: /s/ Matthew Donnelly
Matthew Donnelly, #23354

20169220.1

# Certificate of Service

I hereby certify that on Friday, September 14, 2018 I provided a true and correct copy of the Motion Filed to the following:

University of Nebraska Board of service method: No Service

University of Nebraska service method: No Service

Signature: /s/ Moore,Roger,D. (Bar Number: 21305)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI180002880
Transaction ID: 0007468664
Filing Date: 09/18/2018 10:47:54 AM CDT

## SERVICE RETURN

Doc. No.    555605

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

To:
Case ID: CI 18    2880 John Doe v. University of Nebraska

Received this Summons on _____,_____. I hereby certify that on

_____,_____ at _____ o'clock ___M. I served copies of the Summons
upon the party: _____

by _____

_____

_____

as required by Nebraska state law.

Service and return       $ _____

Copy                        _____

Mileage _____miles        _____

    TOTAL            $ _____

Date: _____    BY: _____
                                          (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: University of Nebraska _____

At the following address: 1400 R Street, Lincoln, NE 68588 _____

_____

_____

on the 6th ____ day of September _____ 2018 ____, as required by Nebraska state law.

Postage $ 8.67 _____    Attorney for: John Doe, Plaintiff _____

The return receipt for mailing to the party was signed on September 10 ____, 2018 ____.

To: University of Nebraska              From: Roger D Moore
    1400 R Street                              3701 Union Dr, #200
                                               Lincoln, NE 68516-0000
    Lincoln, NE 68588

# ATTACH RETURN RECEIPT & RETURN TO COURT

UNITED STATES POSTAL SERVICE

OMAHA
NE 680
10 SEP '18
PM 4 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

**REHM BENNETT & MOORE**
P.C., L.L.O.
9202 West Dodge Road, Ste. 203
Omaha, NE 68114

RECEIVED
SEP 1 3 2018
By RM/LS

Doe

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

University of Nebraska
1400 R Street
Lincoln, NE 68588

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

Nebraska - Lincoln
University Services
Mail & Distribution Services
1100 N. 17th St.
P.O. Box 880699
Lincoln, NE 68588-0699

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

7014 3460 0000 7070 8707

PS Form 3811, July 2013   Domestic Return Receipt

# Certificate of Service

I hereby certify that on Tuesday, September 18, 2018 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

University of Nebraska service method: No Service

University of Nebraska Board of service method: No Service

Signature: /s/ Moore,Roger,D. (Bar Number: 21305)

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI180002880
Transaction ID: 0007468664
Filing Date: 09/18/2018 10:47:54 AM CDT

| SERVICE RETURN | Doc. No.   555606 |
| --- | --- |

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln          NE 68508

To:
Case ID: CI 18    2880 John Doe v. University of Nebraska

Received this Summons on _____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                           _____

Mileage ____miles        _____

   TOTAL              $ _____

Date: _____    BY: _____
                                                        (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: University of Nebraska Board of Regents

At the following address: 3835 Holdrege Street, Lincoln, NE 68583

_____

_____

on the 6th day of September          2018    , as required by Nebraska state law.

*Roger D. Moore*

Postage $ 8.67        Attorney for:  John Doe, Plaintiff

The return receipt for mailing to the party was signed on September 10     , 2018

To: University of Nebraska Board of        From: Roger D Moore
Regents                                                       3701 Union Dr, #200
3835 Holdrege St                                        Lincoln, NE 68516-0000
Lincoln, NE 68583

# ATTACH RETURN RECEIPT & RETURN TO COURT

UNITED STATES POSTAL SERVICE

| | First-Class Mail |
| Postage & Fees Paid |
| USPS |
| Permit No. G-10 |

• Sender: Please print your name, address, and ZIP+4® in this box•

REHM BENNETT & MOORE
P.C., L.L.O.
9202 West Dodge Road, Ste. 200
Omaha, NE 68114

RECEIVED
SEP 13 2018
By RM/LS.

Doe

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

University of Nebraska
Board of Regents
3835 Holdrege St.
Lincoln, NE 68583

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery
Nebraska - Lincoln

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

University
Mail & Distribution Services
1100 N. 17th St.
P.O. Box 880699
Lincoln, NE 68588-0699

3. Service Type
☒ Certified Mail®        ☐ Priority Mail Express™
☐ Registered             ☒ Return Receipt for Merchandise
☐ Insured Mail           ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)   7014 3490 0000 7071 8704

PS Form 3811, July 2013          Domestic Return Receipt

# Certificate of Service

I hereby certify that on Tuesday, September 18, 2018 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

University of Nebraska service method: No Service

University of Nebraska Board of service method: No Service

Signature: /s/ Moore,Roger,D. (Bar Number: 21305)