IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN DOE,<br><br>            Plaintiff,<br><br>    vs.<br><br>UNIVERSITY OF NEBRASKA,<br>UNIVERSITY OF NEBRASKA BOARD<br>OF REGENTS, JAKE JOHNSON, LAURIE<br>BELLOWS, MEAGAN COUNLEY, and<br>TONI ANAYA,<br><br>            Defendants. | 4:18CV3142<br><br><br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the court on Defendants' motion for summary judgment (Filing No. 72). Upon careful review of the pleadings, evidence, and briefs, the court concludes the motion should be granted with respect to the remaining federal law claim (Count I of Plaintiff's Amended Complaint), but all state law claims (Counts II through V of Plaintiff's Amended Complaint) should be remanded to the District Court of Lancaster County, Nebraska, where this action originated.[1]

### I. BACKGROUND

Plaintiff, suing under the anonym of John Doe, was a Ph.D. student in the Political Science Department at the University of Nebraska–Lincoln ("UNL"), from August 2015 until May 2018, when he was expelled for violating the Student Code of Conduct when it was determined he had sexually assaulted another UNL student ("Jane Roe") on July 24, 2017. Defendants include UNL and the Board of Regents of the University of Nebraska,

---

[1] This action was commenced in the District Court of Lancaster County, Nebraska, on August 27, 2018, with the filing of a 5-count Complaint against UNL and the Board of Regents (Filing No. 1-1). Defendants removed the action to this court on October 15, 2018, based on Count I of the Complaint, which alleged violations of Title IX of the Education Amendments of 1972, 28 U.S.C. §§ 1681 *et seq*. Following removal, Plaintiff was granted leave to amend to assert a claim against the four UNL employees under 42 U.S.C. § 1983. Plaintiff's 6-count Amended Complaint (Filing No. 25) was filed on June 3, 2019.

plus four UNL employees who are each sued in their individual and official capacities: (1) Jake Johnson, Assistant Vice Chancellor for Student Affairs; (2) Laurie Bellows, Interim Vice Chancellor of Student Affairs; (3) Meagan Counley, Deputy Title IX Coordinator and Investigator; and (4) Toni Anaya, Associate Professor and Chair of the University Student Conduct Board.

In a Memorandum and Order entered on April 3, 2020 (Filing No. 63), the court granted a motion for partial summary judgment filed by the four employees (Filing No. 39), and dismissed with prejudice Count VI of the Amended Complaint, in which Plaintiff claims his rights to procedural and substantive due process under the Fourteenth Amendment were violated. The dismissed Count VI is the only claim alleged against the employees in the Amended Complaint, so they effectively have been dismissed from the action, in both their individual and official capacities.

Count I is a Title IX claim which is alleged against UNL,[2] while Counts II through V are state-law claims which are alleged jointly against UNL and the Board of Regents. UNL denies it has the capacity to be sued.

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

---

[2] Plaintiff contends Count I should be construed as if alleged against the Board of Regents. This contention will be addressed subsequently.

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

### III. DISCUSSION

The "statement of undisputed material facts" section of Defendants' brief (Filing No. 73, pp. 7-41)[3] corresponds to the findings of undisputed facts that were made by the court in granting the previously filed motion for partial summary judgment. (See Filing No. 63, pp. 7-36.) The court now reaffirms each of those findings, which will not be repeated here. Plaintiff, in opposing Defendants' motion for summary judgment, relies upon transcripts of two depositions that were taken on taken on September 14, 2020 (Filing Nos. 87-1, 87-2), and upon his personal affidavit, which was attached to the brief filed in opposition to Defendants' previously filed motion (Filing No. 55, pp. 25-26). In rebuttal, Defendants have filed the affidavit of Meagan Counley (Filing No. 94-1), who was one of the deponents. The court will make reference to this additional evidence as necessary.

#### A. UNL'S Capacity to be Sued

UNL's capacity to sue or be sued in federal district court is determined by Nebraska law. *See* Fed. R. Civ. P. 17(b). The court is not aware of any reported decisions directly on

---

[3] The court's local rules specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (emphasis omitted). The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). The moving party may, but is not required, to reply to the opposing party's response. *See Metro. Prop. & Cas. Ins. Co. v. Westport Ins. Corp.*, 131 F. Supp. 3d 888, 892 n. 2 (D. Neb. 2015).

point, but the Eighth Circuit's decision in *Lundquist v. Univ. of S.D. Sanford Sch. of Med.,* 705 F.3d 378 (8th Cir. 2013), made with reference to South Dakota law, appears controlling. In that case, a former employee of the University of South Dakota Sanford School of Medicine brought an ADA claim against the School of Medicine. The district court granted summary judgment in favor of the School of Medicine, based on its lack of capacity to be sued, and the Court of Appeals affirmed, stating:

> Rule 17(b) defines when a party has the capacity to sue or be sued in federal court. Unlike the doctrines of standing and real-party-in-interest, "capacity is conceived to be a party's personal right to litigate." 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1542 (3d ed. 2010). The capacity of a unit of state or local government that is incorporated, like that of a private corporation, is determined "by the law under which it was organized." Rule 17(b)(2); *see* 6A Wright, Miller & Kane at § 1562; *Campbell v. Davol, Inc.,* 620 F.3d 887, 895 n. 6 (8th Cir.2010). The capacity of an unincorporated unit of government is determined, in most cases, "by the law of the state where the court is located." Rule 17(b)(3).
>
> The South Dakota Constitution provides that the legislature "shall direct by law in what manner and in what courts suits may be brought against the state." S.D. Const. Art. III § 27. The legislature by statute created the University of South Dakota, S.D. Codified Laws § 13-57-1, and later its School of Medicine, § 13-57-3.1. However, the University was not given the power to sue and be sued. Rather, the statutes created a nine-member Board of Regents that was explicitly granted "power to sue and be sued," § 13-49-11, and placed the University "under the control of the Board of Regents," § 13-57-1. Thus, the district court held that it is the Board of Regents, not the University or its School of Medicine, that has the personal capacity to sue and be sued under South Dakota law. *Accord Pushkin v. S.D. State Univ.,* No. 10–4108, 2010 WL 5089480, at *1 (D.S.D. Dec. 8, 2010). We agree.

*Id*. at 379-80. The Court of Appeals also held that the exception in Rule 17(b)(3)(A), which provides that "a partnership or other unincorporated association with no such capacity [to sue or be sued] under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws," does not apply in this situation. The Court stated:

> By its express terms, for a federal action venued in South Dakota, the exception permits a partnership or unincorporated association "with no ... capacity" to sue or be sued under South Dakota law to be sued in its common name in an action to enforce federal rights, such as the ADA claims

4

> Lundquist asserted. When state law *does* grant such an entity the capacity to sue or be sued, but specifies the manner in which that capacity may be exercised, state law limitations on the manner of exercise apply. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany,* 250 F.Supp.2d 48, 61-62 (N.D.N.Y.2003). That is the situation here. The South Dakota legislature did not deny the University and its School of Medicine the capacity to sue and be sued. Rather, the legislature mandated that the capacity resides in the Board of Regents, the unit of government that controls the University. Thus, the School of Medicine only has the capacity to be sued in an action against the Board of Regents, ….

*Id.* at 380-81 (emphasis in original).

Nebraska law is comparable. The Nebraska Constitution provides that "[t]he general government of the University of Nebraska shall, under the direction of the Legislature, be vested in a board of not less than six nor more than eight regents to be designated the Board of Regents of the University of Nebraska, …." Neb. Const. art. VII, § 10; *see* Neb. Rev. Stat. § 85-103. UNL is one of four universities that comprise the University of Nebraska. Neb. Rev. Stat. §§ 85-101, 85-102.1. The Board of Regents is "a body corporate" and has the power to sue and be sued. Neb. Rev. Stat. § 85-105. UNL is not incorporated and does not have statutory authority to sue or be sued in its own name. Accordingly, UNL is not a proper party and must be dismissed from this action.

Defendants contend UNL's dismissal from this action also requires the dismissal of Count I of the Amended Complaint (the Title IX claim) because it is alleged only against UNL. Plaintiff, while not denying that UNL is an improper party, agues Count I should be construed as if it were alleged against the Board of Regents, as the governing body for UNL. Neither side cites any supporting legal authority for its position.

The heading to Count I in both his original Complaint and the Amended Complaint indicates that the Title IX claim is brought only against UNL. It reads:

<u>COUNT I</u>
<u>Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.</u>
<u>Erroneous Outcome and Unjustly Severe Penalty</u>
(UNL)

(Filing No. 1, p. 30; Filing No. 25, p. 31.) In contrast, the heading to every other count in the original Complaint shows "All Defendants" in parentheses instead of "UNL." In the

5

Amended Complaint, the parenthetical designation in the headings to Counts II through V are changed to "UNL & Board of Regents," and the heading to the newly added Count VI only lists "Johnson, Counley, Anaya, and Bellows" in parentheses.

The issue of UNL's lack of capacity to be sued was first raised by Defendants on December 18, 2019, in the brief that was submitted in support of the motion for partial summary judgment. It was argued by Defendants that UNL should be dismissed from the lawsuit under Rule 17(b), but there was no suggestion that Count I should be dismissed as a result. (See Filing No. 41, pp. 55-56.) The court declined to address this informal request for UNL's dismissal because the issue of its lack of capacity to be sued was not properly raised by the motion for partial summary judgment. (See Filing No. 63 p. 2, n. 1.) Defendants' motion only sought "dismissal of the Sixth Cause of Action on the basis it is barred by qualified, absolute, quasi-judicial and sovereign immunity, and on the merits for lack of a genuine issue of material fact." (Filing No. 39, p. 1.)

Because Plaintiff has elected to stand on his pleadings rather than seeking leave to amend, the court must construe the Amended Complaint "so as to do justice." Fed. R. Civ. P. 8(e). Considering that a complaint does not need to be divided into separate counts unless it contains claims that are founded on separate transactions or occurrences, and then only "[i]f doing so would promote clarity," Fed. R. Civ. P. 10(b), and, further, that separate counts are not required to be labeled, it would be wrong to place too much emphasis on the heading Plaintiff has assigned to Count I of the Amended Complaint. The complaint should be read as a whole, not parsed piece by piece. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Plaintiff alleges in Count I that "Title IX of the Education Amendments of 1972 applies to all public and private educational institutions that receive federal funding, which includes Defendant UNL." (Filing No. 25, ¶ 157). Defendants have not disputed that UNL is subject to Title IX, or that UNL would be a proper party but for its lack of capacity to be sued in its own name under Nebraska law.[4] "The [Nebraska] legislature did not deny the

---

[4] As defined for purposes of Title IX, "an educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department." 20 U.S.C. § 1681(c).

6

University … the capacity to sue and be sued. Rather, the legislature mandated that the capacity resides in the Board of Regents, the unit of government that controls the University. Thus, [UNL] only has the capacity to be sued in an action against the Board of Regents, …." *Lundquist*, 705 F.3d at 381.

The court agrees with Plaintiff that a dismissal of Count I would exalt form over substance. The Board of Regents has been a party to this lawsuit since its inception, and will not be prejudiced if the Amended Complaint is construed as though UNL had not been separately named as a defendant. Thus, the court will not dismiss Count I, but will instead treat it has having been brought against the Board of Regents to redress UNL's alleged Title IX violations. *See, e.g., Harrison v. Lancaster Cty. Sheriff Dep't*, No. 4:17CV3042, 2017 WL 1682779, at *2 (D. Neb. May 1, 2017) (construing plaintiff's claims against sheriff's department as claims against county) (citing *Lott v. Ferrell*, 109 Fed. App'x 827, 828 (8th Cir. 2004) (claims against jail and sheriff's department were against the county)).

### B. Count I (Title IX Claim)

"Courts have recognized at least four theories of Title IX liability in cases alleging gender bias in university disciplinary proceedings: (1) erroneous outcome, (2) selective enforcement, (3) deliberate indifference, and (4) archaic assumptions." *Doe v. Washington Univ.*, 434 F. Supp. 3d 735, 751 (E.D. Mo. 2020) (citing *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018)). Count I of Plaintiff's Amended Complaint is based on the first two theories of liability, as Plaintiff claims he was subjected to "a biased, prejudiced and unfair process in violation of Title IX designed to find him, the male, responsible for sexual assault and be punished severely for it." (Filing No. 25, ¶ 172.)

### 1. Erroneous Outcome Theory

Under an erroneous outcome theory, "the plaintiff attacks the university disciplinary proceeding on grounds of gender bias by arguing that the plaintiff was innocent and wrongly found to have committed an offense.'" *Id.* at 758 (quoting *Salau v. Denton*, 139 F. Supp. 3d 989, 998 (W.D. Mo. 2015)). To prevail, the plaintiff must show: "(1) evidence illustrating an 'articulable doubt' as to the accuracy of the outcome of the proceeding; and (2) particular circumstances showing gender bias was a motivating factor in the erroneous outcome. *Id.* (citing *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 924 (S.D. Iowa 2018)). "To show an articulable doubt, a plaintiff may point to 'particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or

witnesses, particularized strengths of the defense, or ... particular procedural flaws affecting the proof." *Id.* (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). A plaintiff may illustrate gender bias by identifying "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* (quoting *Yusuf*, 35 F.3d at 715).

Plaintiff claims there is articulable doubt about the accuracy of UNL's decision that he violated the Student Code of Conduct because "the undisputed evidence was that the conduct occurred off campus, and the Conduct Board made no determination and no party presented anything at the hearing that proved jurisdiction." (Filing No. 86, p. 21.) He cites the following Code provision:

> This Student Code of Conduct applies to conduct that occurs on University premises and off University premises, if the conduct is determined by the Dean of Students to adversely affect the University community, its members, its reputation or the pursuit of its objectives.

(Defendants' Statement of Facts, ¶ 10; Plaintiff's Statement of Additional Facts, ¶ 187.) Plaintiff argues this provision means "UNL could only punish a student's conduct if UNL had jurisdiction over the conduct. The Code expressly provided that the Code only addressed conduct that occurred on campus or off campus if the Dean of Students made a determination that the conduct adversely affected the University or its members, its reputation, or the pursuit of its objectives." (Filing No. 86, p. 22.)

"To begin with, the 'jurisdictional provision' is not jurisdictional. It does not grant the college authority to discipline students for misconduct, nor does it affect the college's inherent authority to do so. Instead, the provision describes the conduct over which the college may exercise its disciplinary authority." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1233 n. 10 (11th Cir. 2018) (upholding comparable student code provision against a void-for-vagueness argument). The provision "put[s] students on notice that the college may discipline them because of their off campus misconduct … that adversely affects the college community. And the college community obviously includes other students." *Id.*

Plaintiff conveniently omits the "University community" language in his argument, as well as the undisputed fact that Jane Roe was another UNL student. The fact that the sexual assault occurred off campus does not create an articulable doubt as to the accuracy

8

of the outcome of the proceeding.[5] *See id*. at 1236 ("[The plaintiff] admitted the underlying conduct. That conduct met the school's definition of stalking. Stalking was punishable by suspension under the Code of Conduct. It's as simple as that."); *Doe v. Univ. of Delaware*, No. CV 19-1963-MN, 2020 WL 6060476, at *5-6 (D. Del. Oct. 14, 2020) ("I don't take Plaintiff to seriously contest that UD's Sexual Misconduct Policy, by its terms, reaches students who commit sexual assaults against other students off campus in the summer."), *report and recommendation adopted*, 2020 WL 6343290 (D. Del. Oct. 29, 2020).

Plaintiff's "jurisdictional" issue was fully explored on appeal to the Chancellor's Office and determined to be without merit, or, at most, harmless error. In her July 26, 2018 decision, Laurie Bellows noted:

> Foremost, the conduct alleged—-nonconsensual sexual intercourse—is so severe that its purported occurrence against a community member can be presumed to adversely affect the University community, its members, its reputation, or the pursuit of its objectives. Therefore, no formalized finding by the Dean of Students is necessary in order to establish jurisdiction in this matter. Even if it was necessary to make a finding, the Dean of Students worked in close collaboration with the office that is designated with responsibility for investigating the allegations in this complaint, the Office of Institutional Equity and Compliance (IEC), and was made aware of the investigation and has the authority to inquire about such an investigation and its progress. The fact that IEC proceeded with the investigation clearly demonstrates that the University, and the Dean of Students considered the alleged conduct to have had the potential to adversely affect the University community, its members, its reputation, or the pursuit of its objectives demonstrates that this finding was implied, sufficient to proceed with an investigation. Furthermore even if the procedures require a formalized finding by the Dean of Students, lack of such a finding is harmless error because the adverse effect of your conduct on the University community is apparent from the record.

---

[5] There is no dispute that Plaintiff had sexual intercourse with Jane Roe at her off-campus apartment on July 24, 2017, and, in a recorded telephone conversation at a later date, as well as a written statement, Plaintiff admitted overcoming Jane Roe's objections after she verbally refused and pushed him away. (Defendants' Statement of Facts, ¶¶ 55-58, 134-136, 145.) The Student Code states, "The person need only resist, either verbally or physical, so as to make the person's refusal to consent genuine and real and so as to make known to the actor the person's refusal to consent." (Filing No. 41-7, p. 23; Plaintiff's Statement of Additional Facts, ¶ 166.)

9

(Filing No. 45-7, p. 2 (footnote omitted).) Meagan Counley also testified at her deposition that the IEC "evaluated whether or not there was a nexus or a connection between the conduct and the activity and educational program and determined that there was, given that they were both students, both in the same program at the school, and that the effects of the reported behavior could easily transfer to the university setting." (Plaintiff's Statement of Additional Facts, ¶ 211.)

"Because [Plaintiff] has not shown that there is a genuine issue about the correctness of the outcome of his disciplinary proceeding, his Title IX claim fails, and [the court] need not decide whether there is a causal connection between the outcome of the proceeding and gender bias." *Valencia Coll.*, 903 F.3d at 1236.

### 2. Selective Enforcement Theory

A selective enforcement claim "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Washington Univ.*, 434 F. Supp. 3d at 757 (quoting *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017)). *See also Yusuf*, 35 F.3d at 715 (holding same). To prevail, Plaintiff must "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Id.* (quoting *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015)). In other words, he must "identify a comparator of the opposite sex who was treated more favorably when facing similar disciplinary charges." *Id.* (*citing Does 1-2 v. Regents of the Univ. of Minn.*, No. CV 18-1596 (DWF/HB), 2019 WL 2601801, at *5 (D. Minn. June 25, 2019)).

A comparator must be "similarly situated in material respects." *Doe v. Brown Univ.*, No. CV 17-191-JJM-LDA, 2020 WL 5729427, at *8 (D.R.I. Sept. 24, 2020) (quoting *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996)). To determine whether the circumstances are similarly situated, "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.... Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.*" Id.* (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)).

Plaintiff's selective enforcement claim fails as a matter of law because the record reflects no evidence that a female was in circumstances sufficiently similar to his own and

10

was treated more favorably. The only female comparator reflected in the record is Jane Roe. Plaintiff avers in his affidavit:

> On or about January 8, 2018, I met with Meagan Counley regarding the University of Nebraska's investigation of alleged sexual misconduct against me. During this meeting I reported to Ms. Counley that [Jane Roe] on numerous occasions made sexual contact with me without my consent and had physically battered me. Upon information and belief, Ms. Counley never opened an investigation regarding the information I reported to her.

(Filing No. 55, ¶ 4.) Plaintiff states more generally in his brief that "[w]hen [Counley] interviewed Plaintiff, he reported … that Jane Roe had committed misconduct against him. [Ex. B, p. 31:7-11]." (Plaintiff's Statement of Additional Facts, ¶ 202.) Counley testified, "I believe [Plaintiff] made reference to a physical altercation, and also one of a sexual nature." [Ex. B, p. 31:14-15]." (Plaintiff's Statement of Additional Facts, ¶ 203.) Counley further testified she did not open an investigation into Plaintiff's allegation because "[s]ome of these statements that came up were made in response to her complaint as a – in a way, as a defense. He never requested to file a complaint with our office regarding the reported conduct." (Plaintiff's Statement of Additional Facts, ¶¶ 204, 205.)

When a Title IX respondent makes accusations against the complainant defensively, the circumstances are not substantially similar so as to establish that the complainant received favorable treatment. *See Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019) ("Haidak's claim that the decision to initiate charges was affected by his sex rests on the fact that the university filed charges against him when Gibney accused him of misconduct, yet filed no charges against her when he accused her of misconduct. But the two were not similarly situated as complainants. Gibney and her mother affirmatively contacted the university to report her charges and to seek relief…. Haidak's accusations came second in time and arose only defensively."); *Brown Univ.*, 2020 WL 5729427, at *8 ("Upon learning Jane had complained against him, John accused Jane in his defense, but did not lodge a formal complaint against her…. Because John's counterclaim against Jane 'came second in time and arose only defensively,' John and Jane are not similarly situated so are not comparators for purposes of this selective enforcement claim." (quoting *Haidak*, 933 F.3d at 74)). While Plaintiff argues that Jane Roe and he both complained of "sexual harassment" (Filing No. 86, p. 32), Jane Roe claimed she was sexually assaulted and she filed a formal complaint. Plaintiff's vague allegations of misconduct on Jane Roe's part, which were made in response to the filing of her complaint, have not been shown to involve substantially similar behavior.

11

### C. Counts II Through V (State-Law Claims)

A federal district court is required to exercise supplemental jurisdiction over claims "that are so related to [the] claims in the action within such original jurisdiction that they form part of the same case or controversy" unless one of the enumerated circumstances giving the district court discretion to decline jurisdiction is present. *Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013); 28 U.S.C. § 1367(a). One such circumstance provides a court discretion to decline jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." *Id.*; 28 U.S.C. § 1367(c)(3). In exercising its discretion, the district court should consider factors such as judicial economy, convenience, fairness, and comity. *Id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Quinn v. Ocwen Fed. Bank FSB,* 470 F.3d 1240, 1249 (8th Cir. 2006) (per curiam)). Although the court has "broad discretion in determining whether to exercise supplemental jurisdiction[,]" *Crest Const. II, Inv. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011), "[w]here as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (citations omitted); *see also Nagel v. City of Jamestown*, 952 F.3d 923, 935 (8th Cir. 2020) ("Usually, the dismissal of the federal claims 'will point toward declining to exercise jurisdiction over the remaining state-law claims.'" (quoting *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016)); *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (same).

Comity is particularly significant here because state sovereign immunity has been raised as a defense to each claim, and the parties dispute, among other things, whether Plaintiff was required to seek relief under the State Contract Claims Act and whether the decision to expel Plaintiff from the University is subject to judicial review under the Nebraska Administrative Procedure Act. The Court of Appeals has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." *Gregoire v. Class,* 236 F.3d 413, 420 (8th Cir.2000) (quoting *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990)*; see also Starkey v. Amber Enterprises, Inc*., No. 19-3688, __ F.3d __, 2021 WL 377800, at *4 (8th Cir. Feb. 4, 2021) ("When a claim raises novel issues of state law, we have determined that it is better to let the state courts decide the matter.").

Because this case was removed from state court, it will be remanded rather than dismissed. *See, e.g., Porter v. Williams,* 436 F.3d 917, 920 (8th Cir.2006) (once the district court granted partial summary judgment, it had discretion either to remand *sua sponte* the remaining state-law claims or to keep them in federal court); *Horne v. Saint Elizabeth Reg'l*

*Med. Ctr.*, No. 4:07CV3152, 2008 WL 686856, at *8-9 (D. Neb. Mar. 10, 2008). The court will, unless notified by all remaining parties that they wish to expedite remand to state court, stay its transmittal of the case for 30 business days to permit sufficient time for an appeal. *See Fed. Home Loan Mortgage Corp. v. Grantz*, 568 Fed. App'x 482, 483 (8th Cir. 2014) (citing *Chestnut v. People of State of New York*, 86 S. Ct. 940 (1965)); *Reiber v. Cty. of Gage*, No. 4:15-CV-3023, 2016 WL 2596025, at *2 n. 2 (D. Neb. May 5, 2016).

## IV. CONCLUSION

The University of Nebraska is not a proper defendant, but Count I can be maintained against the Board of Regents. Count I fails as a matter of law, however, because there is not sufficient evidence to create an articulable doubt as to the accuracy of the outcome of the disciplinary proceeding or to demonstrate that a similarly situated female was treated more favorably by the University. With the dismissal of Plaintiff's federal law claims, the court declines to exercise supplemental jurisdiction over any state law claims, and will remand the case to state court.

IT IS THEREFORE ORDERED:

1. Defendants' motion for summary judgment (Filing No. 72) is granted in part and denied in part, as follows:
   a. Count I of Plaintiff's Amended Complaint (Title IX claim) is dismissed with prejudice.
   b. Defendant University of Nebraska is dismissed as a party.
   c. In all other respects, the motion is denied without prejudice.

2. Pursuant to the court's Memorandum and Order entered on April 3, 2020 (Filing No. 63), Count VI of Plaintiff's Amended Complaint (§ 1983 claim) is dismissed with prejudice and Defendants Jake Johnson, Laurie Bellows, Meagan Counley, and Toni Anaya, in both their individual and official capacities, are dismissed as parties.

3. This case is remanded to the District Court of Lancaster County, Nebraska (Case No. CI 18-2880).

4. Judgment shall be entered by separate document.

5. The Clerk of the Court shall stay remand of this case to state court for 30 days from the date of this order.

6. The Clerk of the Court is directed to set a case management deadline of **March 10, 2021**, with the following docket text: **remand to state court absent notice of appeal**.

7. This case is closed for statistical purposes.

Dated this 8th day of February, 2021.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge